# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

TOM GONZALES and BIRCH VENTURES
LLC,

                    Plaintiffs,

                    -v.-

NATIONAL WESTMINSTER BANK Plc,

                    Defendant.

--------------------------------------------------------x

No.: 11-CIV-1435 (BSJ)

ECF Case

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
## RULE 60(b) MOTION FOR RELIEF FROM ORDER OF DISMISSAL

Dated: New York, New York
       April 3, 2013

**SCHULTE ROTH & ZABEL LLP**
Howard Schiffman
Michael E. Swartz
919 Third Avenue
New York, New York 10022
(212) 756-2000
*Attorneys for Defendant National Westminster
Bank Plc*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................. 1

LEGAL STANDARD .................................................................................................. 7

ARGUMENT ............................................................................................................... 7

I.  PLAINTIFFS FAILED TO FILE THEIR MOTION WITHIN THE
    "REASONABLE TIME" LIMIT OF RULE 60(c) ........................................... 7

II.  PLAINTIFFS CANNOT MEET THE HIGH STANDARD FOR NEWLY-
     DISCOVERED EVIDENCE .......................................................................... 8

     A.  The Account Statements Cannot Be The Basis For Newly-Discovered
         Evidence ................................................................................................ 9

         1.  Plaintiffs have had the account statements since at least 2004 and
             already asserted the same arguments based on them to the Court ....... 9

         2.  Plaintiffs cannot show they exercised due diligence in obtaining
             evidence related to the account statements ...................................... 11

     B.  Mr. DeRosa's Deposition Testimony Did Not Exist At The Time Of Judge
         Jones's Order ........................................................................................ 11

     C.  Mr. DeRosa Offered No Substantive Opinions Or Admissible Evidence
         About The Account Statements And Plaintiffs' Characterization Of Mr.
         DeRosa's Testimony Is False And Misleading ........................................ 12

     D.  Mr. DeRosa's Alleged Statements Would Not Change Judge Jones's Holding
         That Plaintiffs' Were On Inquiry Notice And Therefore Barred From Asserting
         Fraudulent Concealment ........................................................................ 14

III.  PLAINTIFFS' RULE 60(b)(3) MOTION FAILS TO ALLEGE ANY ACTS OF
      FRAUD UPON THE COURT IN CONNECTION WITH THE MOTION TO
      DISMISS ..................................................................................................... 15

CONCLUSION ........................................................................................................... 16

DOC ID - 20021334.2

# TABLE OF AUTHORITIES

**CASES**                                                                **PAGE NO.**

Abrams v. National Westminster Bank Plc,
    No. 11 Civ. 01667(GBD), 2012 WL 946792 (S.D.N.Y. Mar. 19, 2012) .............................3, 4

Becnel v. Deutsche Bank AG,
    838 F. Supp. 2d 168 (S.D.N.Y. 2011)..................................................................................9, 11

Boule v. Hutton,
    328 F.3d 84 (2d Cir. 2003)........................................................................................................9

Boxill v. Brooklyn Coll.,
    No. 96–CV–561, 2003 WL 21554498 (E.D.N.Y. July 10, 2003) ...........................................14

Clavizzao v. United States,
    No. 08-6434, 2010 WL 6836461 (S.D.N.Y. Oct. 25, 2010)....................................................14

Frankel v. ICD Holdings S.A.,
    939 F. Supp. 1124 (S.D.N.Y. 1996)........................................................................................7

General Universal Sys., Inc. v. Lee,
    379 F.3d 131 (5th Cir. 2004) .................................................................................................12

Gonzalez v. Gannett Satellite Info. Network, Inc.,
    903 F. Supp. 329 (N.D.N.Y. 1995), aff'd, 101 F.3d 109 (2d Cir. 1996)................................11

Henriquez v. Astrue,
    499 F. Supp. 2d 55 (D. Mass. 2007) ......................................................................................8

Ins. Co. of North America v. Public Serv. Mut. Ins. Co.,
    609 F.3d 122 (2d Cir. 2010)....................................................................................................9

Johnson v. Askin Capital Mgmt., L.P.,
    202 F.R.D. 112 (S.D.N.Y. 2001) ............................................................................................8

Kagan v. Caterpillar Tractor Co.,
    795 F.2d 601 (7th Cir. 1986) ..................................................................................................7

Kim v. Columbia Univ.,
    No. 06 CV 5365 (RPP), 2011 WL 2019801 (S.D.N.Y. May 19, 2011) .................................16

Klamath Strategic Investment Fund, LLC v. United States,
    472 F. Supp. 2d 885 (E.D. Tex. 2007).....................................................................................2

Lapiczak v. Zaist,
    54 F.R.D. 546 (D. Vt. 1972) ...................................................................................11

Limon v. Double Eagle Marine, L.L.C.,
    771 F. Supp. 2d 672 (S.D. Tex. 2011) ......................................................................7

Petreykov v. City of New York,
    No. 96-2980, 1998 WL 146691 (S.D.N.Y. Mar. 24, 1998) ....................................16

Questrom v. Federated Dep't. Stores, Inc.,
    192 F.R.D. 128 (S.D.N.Y. Mar. 16, 2000)..................................................................7

Rozier v. Ford Motor Co.,
    573 F.2d 1332 (5th Cir. 1978) ................................................................................16

Soward v. Deutsche Bank AG,
    No. 10 Civ. 9248(SAS), 11 Civ. 01615(SAS),
    2011 WL 3875347 (S.D.N.Y. Sept. 1, 2011)..............................................................4

State St. Bank v. Inversiones Errazuriz Limitada,
    374 F.3d 158 (2d Cir. 2004)....................................................................................15

Stridiron v. Stridiron,
    698 F.2d 204 (3rd Cir. 1983) ..................................................................................16

Swope v. Siegel-Robert, Inc.,
    243 F.3d 486 (8th Cir. 2001) ..................................................................................12

Tayebi v. KPMG, LLP,
    2008 WL 518149 (N.Y. Sup. Ct. Feb. 20, 2008) .......................................................4

Taylor v. Texgas Corp.,
    831 F.2d 255 (11th Cir. 1987) ................................................................................16

Thompson v. Paul,
    No. CIV–05–0990–PHXMHM, 2007 WL 973975 (D. Ariz. Mar. 30, 2007) ...........8

United States v. Int'l Bhd. of Teamsters,
    247 F.3d 370 (2d Cir. 2001)......................................................................................7

United States v. Potamkin Cadillac Corp.,
    697 F.2d 491 (2d Cir. 1983)......................................................................................9

Walker v. Dep't of Veterans Affairs,
    No. 94 Civ. 5591 (MBM), 1995 WL 625689 (S.D.N.Y. Oct. 25, 1995).................12

## PRELIMINARY STATEMENT

Over one year ago, Judge Barbara Jones held that claims arising from a tax shelter that Plaintiffs entered into eleven years before filing their complaint were time-barred, and dismissed the claims with prejudice.  The holding was supported by overwhelming evidence, as well as established law, and was consistent with other decisions dismissing similar claims by similar plaintiffs, including contemporaneous orders entered in this Court by Judge George Daniels and Judge Shira Scheindlin.  The present motion, which follows Plaintiffs motion for reconsideration of the dismissal and appeal of the dismissal, repackages already rejected arguments (based on documents previously filed with the Court) in a frivolous attempt to overturn Judge Jones's decision.  The parties have fully litigated the statute of limitations issues in this case, and there is no doubt Plaintiffs' claims are time-barred.  Thus, Plaintiffs' attempt to further prolong this case should be rejected.

As Judge Jones found, the claims in this case arose from a short-lived transaction that occurred thirteen years ago.  In March 2000, Plaintiff Tom Gonzales, a wealthy and sophisticated American businessman, elected to participate in a sixty-day tax shelter strategy, created and marketed by KPMG, LLP ("KPMG") and Presidio Advisory Services, LLC ("Presidio"), which was known as Bond Linked Issue Premium Structure ("BLIPS").  BLIPS reportedly created massive on-paper losses for rich individuals to potentially offset taxes on huge amounts of money received in that tax year.  NatWest's alleged role, like that of many other banks in BLIPS transactions, was to provide a loan that facilitated the BLIPS transaction.  In March 2011, almost eleven years after completing their $912 million BLIPS transaction, repaying the loan, and ending any association with NatWest, Plaintiffs filed this case alleging that the loan provided by NatWest was a sham.

On March 20, 2012, after briefing by the parties, the Court dismissed Plaintiffs' claims as barred by the statute of limitations.  It was not a close call.  As Judge Jones found, "by 2003, and perhaps earlier, the BLIPS strategy and the [allegations of fraud] associated with it had been brought into the public light by media, the U.S. Government, and the courts."  (Dkt. No. 20 at 6.)  Indeed, at least a decade ago, the IRS rejected BLIPS-related losses as an acceptable offset to taxable gains and commenced investigations, audits, and proceedings against BLIPS participants (including Plaintiffs).  Further, in the early 2000s, the BLIPS transactions as a whole, and the BLIPS loans more specifically—as well as other similar tax shelters created and marketed by KPMG and Presidio—were the subject of high-profile Congressional investigations and reports, widely-publicized criminal indictments and trials, class actions and other civil litigation, and widespread mainstream media coverage.

The publicity surrounding BLIPS included general reports that the loans provided by BLIPS-lending banks were shams and specific descriptions of NatWest's role in providing BLIPS loans.  For example, as Judge Jones found:

- A 2003 United States Senate report on BLIPS, which mirrors Plaintiffs' factual allegations and specifically referenced NatWest, "unequivocally explores the fact that NatWest did not make bona fide loans in connection with the BLIPS transactions."  (Dkt. No. 20 at 8-9.)

- There were numerous suits by BLIPS participants against BLIPS banks, including Simon v. KPMG LLP, a 2005 class action that "specifically alleged that banks, including NatWest, provided loans for BLIPS transactions, earning them millions of dollars in fees but never actually provided a bona fide loan."  (Id. at 9.)

- The January 2007 decision in Klamath Strategic Investment Fund, LLC v. United States, 472 F. Supp. 2d 885 (E.D. Tex. 2007), a suit by two former BLIPS investors against the IRS for disallowing their claimed BLIPS losses generated by loans provided by NatWest (which Judge Jones found was "markedly similar" to the facts alleged by Plaintiffs in this case) found that "NatWest did not make any loans."  (Id. at 9-10.)

- Each of the events above, along with many other BLIPS items, were published and disseminated in the mainstream media, including The Wall Street Journal and The New York Times, including a report in 2007 that the <u>Klamath</u> Court had "found that BLIPS was not a real investment at all, that its loans were fake and that it had no economic substance or genuine business purpose," and "further speculated that the decision could lead to litigation against NatWest." (<u>Id.</u> at 10.)

Thus, Judge Jones concluded, "the substantial amount of media attention, litigation activity, and Government pronouncements provided inquiry—if not specific—notice to the Plaintiffs in this case of the facts surrounding their alleged fraud."  (Dkt. No. 20 at 11.)

In addition, Judge Jones rejected Plaintiffs' claim that account statements provided in connection with the BLIPS transaction tolled the limitations period due to fraudulent concealment:

> In the fraudulent misrepresentation or concealment context, the equitable estoppel doctrine is not available to a plaintiff who possesses timely knowledge sufficient to place him or her under a duty to make and ascertain all the relevant facts prior to the expiration of the applicable statute of limitations … Here, because the Plaintiffs were on notice of the alleged fraudulent misconduct long before the expiration of the applicable statute of limitations they may not claim the benefits of equitable tolling under the doctrine of fraudulent concealment.

(Dkt. No. 20 at 11-12) (internal citations and quotations omitted).

"In any event," Judge Jones held, Plaintiffs had not "stated a conceivable—let alone plausible basis for a fraudulent concealment claim" because they received the account statements in 2000.  (<u>Id.</u> at 12.)

Shortly before Judge Jones dismissed this case as time-barred, Judge Daniels also dismissed as time-barred a virtually identical case brought by a separate plaintiff.[1]  In that case, <u>Abrams v. National Westminster Bank Plc</u>, No. 11 Civ. 01667(GBD), 2012 WL 946792, at *4

---

[1]    Indeed, as described below, the parties have agreed to have the appeal of this case and the appeal in the <u>Abrams</u> case heard in tandem and they have been joined by the Second Circuit.

(S.D.N.Y. Mar. 19, 2012), Judge Daniels, like Judge Jones, found that "[b]y 2003 the BLIPS strategy and the fraud based actions based on it had become public by the U.S. Government, the media, and the courts."  Thus, Judge Daniels held that the Abrams plaintiffs had inquiry notice of their allegations that the loan provided by NatWest in connection with their 1999 BLIPS transaction was a sham long before they filed their complaint in March 2011, and dismissed the case as time-barred.  Judge Daniels, like Judge Jones, also held that the doctrine of equitable estoppel was not available to a plaintiff on inquiry notice and dismissed the plaintiffs' fraudulent concealment claim.  Many other recent cases involving similar fraud claims against BLIPS lending banks also have been dismissed as time-barred.  See, e.g., Soward v. Deutsche Bank AG, No. 10 Civ. 9248(SAS), 11 Civ. 01615(SAS), 2011 WL 3875347 (S.D.N.Y. Sept. 1, 2011) (Scheindlin, J.) (dismissing, as time-barred under New York law, two actions against Deutsche Bank, which alleged the bank charged fees on BLIPS loans that did not exist); Tayebi v. KPMG, LLP, 2008 WL 518149, at *7 (N.Y. Sup. Ct. Feb. 20, 2008) (dismissing, as time barred, claims by a former BLIPS investor against the lending bank, based on, among other things, the court's finding that the widespread publicity surrounding BLIPS put the plaintiff on inquiry notice of its potential claims more than two years before that complaint was filed in 2007).

Undeterred by the overwhelming evidence and uniform decisions of numerous courts, Plaintiffs, who previously also moved to reconsider Judge Jones's decision and have appealed the dismissal,[2] now come to the Court with a slightly different spin on already-rejected

---

[2]    On March 16, 2012, Plaintiffs filed a motion for reconsideration on the basis that the Court "overlooked [Plaintiffs] separate and distinct argument" that the statute of limitations had not yet started to run, which Plaintiffs asserted "hones on the account statements that NatWest issued to [Plaintiffs]."  (Dkt. No. 22 at 1.)  As we explained in our opposition filed on April 2, 2012, that motion is frivolous. The motion was fully briefed on April 3, 2012, but no action has been taken.  In addition, on April 6, 2012, Plaintiffs appealed the order dismissing the amended complaint.  That appeal has been joined with the appeal in the Abrams case by the Second Circuit, on consent from all parties, and they will be heard in tandem.  On June 26, 2012, the Second Circuit granted Plaintiffs' motion to stay the appeal pending a decision on the motion for reconsideration.

arguments and ask the Court to overturn its prior decision based on far-fetched claims of new evidence of fraudulent concealment.  The only purported "new evidence" identified by Plaintiffs are portions of a deposition transcript from August 2012 in which Plaintiffs' counsel questioned David DeRosa, a proposed expert witness on foreign exchange transactions in a different case involving different parties, about the same account statements that Plaintiffs previously had alleged concealed the nature of the BLIPS loan.  However, Judge Jones expressly considered those documents and rejected that argument.

Notwithstanding the obvious flaws with their assertions, Plaintiffs insist that Mr. DeRosa's purported statements constitute important, newly-discovered evidence that justifies relief under Rule 60(b)(2).  That claim fails for at least five separate reasons:

- First, as described above, the account statements at issue were submitted to the Court by Plaintiffs in connection with their motion to dismiss, and the Court already has rejected the argument that those statements concealed the alleged fraud or otherwise tolled the statute of limitations.

- Second, Plaintiffs have had the account statements since at least 2004, and therefore cannot show that they exercised due diligence in obtaining purported new evidence based on those documents.  In fact, in 2011, the Court confronted a virtually identical situation in a separate suit by another BLIPS participant and denied that Rule 60(b) motion for lack of diligence.

- Third, Mr. DeRosa's deposition took place in August 2012, after the order dismissing Plaintiffs' complaint.  It is black letter law that statements and opinions created after a final judgment are not newly-discovered evidence.

- <u>Fourth</u>, Mr. DeRosa repeatedly told Plaintiffs' counsel during his deposition that he had never seen the account statements before, and therefore he expressly did not—and could not—offer any evidence about the meaning of the account statements.  Indeed, Plaintiffs' counsel acknowledged during the deposition that he "didn't ask [Mr. DeRosa] to testify to what [the account statements] mean."  In short, contrary to Plaintiffs' assertions, Mr. DeRosa did not offer any substantive (much less admissible) evidence about the account statements.

- <u>Fifth</u>, Mr. DeRosa's purported statements about the account statements would not change the motion to dismiss outcome.  Plaintiffs were on inquiry notice of their claims years ago due to overwhelming public information.  That is the fundamental issue in this case.  Accordingly, as Judge Jones held, the doctrine of equitable estoppel under fraudulent concealment is not available to Plaintiffs.

Plaintiffs' request for relief under Rule 60(b)(3) due to fraud is equally frivolous and merits little discussion.  Plaintiffs have not identified any fraud or misconduct in connection with the motion to dismiss.  Instead, Plaintiffs simply re-assert the fraud claims from their complaint.  It is well established that rehashing a previously rejected argument is not sufficient for a Rule 60(b) motion.

In sum, this case was properly dismissed almost a year ago based on the overwhelming record establishing Plaintiffs were on inquiry—if not specific—notice of their claims many years ago, and that decision was consistent with the conclusion reached by other courts that have uniformly held that similar claims are time-barred.  Plaintiffs' latest motion does not offer any legal or factual basis for overturning that order.  Accordingly, the motion for relief from a final judgment should be denied.

## LEGAL STANDARD

Relief under Rule 60(b) is "generally not favored and is properly granted only upon a showing of exceptional circumstances."  United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001); see also Questrom v. Federated Dep't. Stores, Inc., 192 F.R.D. 128 (S.D.N.Y. Mar. 16, 2000) ("Relief from a final order or judgment is extraordinary and available only in exceptional circumstances.") (internal quotations and citations omitted).  The burden of proof is on the party seeking relief from judgment.  247 F.3d at 391.  "Rule 60(b) may not be used to 'relitigate matters settled by the original judgment.'"  Frankel v. ICD Holdings S.A., 939 F. Supp. 1124, 1127 (S.D.N.Y. 1996) (quoting Donovan v. Sovereign Sec., Ltd., 726 F.2d 55, 60 (2d Cir. 1984)).

## ARGUMENT

**I.     PLAINTIFFS FAILED TO FILE THEIR MOTION WITHIN THE "REASONABLE TIME" LIMIT OF RULE 60(c).**

A motion for relief under Rule 60(b)(2) or (3) "must be made within a reasonable time … and no more than a year after the entry of the judgment or order."  (F.R.C.P. 60(c).)  Importantly, "the one-year period represents an extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time,' even though the one-year period has not expired."  Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 610 (7th Cir. 1986) (quoting Wright & Miller, Federal Practice and Procedure, Civil § 2866, p. 232, and affirming order holding Rule 60(b) motion filed almost four months after discovery of purported new information was not filed within a reasonable time).  Indeed, courts repeatedly have held that Rule 60(b) motions are not filed within a "reasonable time" when the litigant waits several months after discovering purported new evidence.  See Limon v. Double Eagle Marine, L.L.C., 771 F. Supp. 2d 672, 678 (S.D. Tex. 2011) (four month delay in filing Rule 60(b)(2) motion after discovering new

evidence and getting expert opinion was unreasonable even though the motion was filed within the one-year limit and the new evidence would have produced a different result); Henriquez v. Astrue, 499 F. Supp. 2d 55, 57 (D. Mass. 2007) (finding that a plaintiff who learned of new information on April 6, 2007 but did not file a motion to vacate under Rule 60(b) until July 16, 2007, which was within one year of the entry of judgment, did not file it within a reasonable time); Thompson v. Paul, No. CIV-05-0990-PHXMHM, 2007 WL 973975, at *3 (D. Ariz. Mar. 30, 2007) (finding that a six-month delay between discovering new evidence and filing the Rule 60 motion was unreasonable).

Here, Plaintiffs have had the underlying evidence (i.e., the account statements) since at least April 2004 (as described below) and, like the cases cited above, delayed in acting on allegedly new information.  Plaintiffs have known about Mr. DeRosa's deposition testimony since they questioned him in August 2012, yet they waited almost six months, until February 25, 2013, to file their Rule 60(b) motion.  As with their belated complaint, Plaintiffs offer no reasonable explanation for once again delaying pursuit of whatever claims they believe exist.  (In fact, rather than the discovery of any new evidence, the timing of Plaintiffs' motion appears to coincide only with their discovery that Judge Jones left the bench in January 2013).  Accordingly, Plaintiffs failed to file the motion within a reasonable time.  That delay is alone dispositive, requiring that Plaintiffs' motion be dismissed.

## II.     PLAINTIFFS CANNOT MEET THE HIGH STANDARD FOR NEWLY-DISCOVERED EVIDENCE.

"The party moving for relief under Rule 60(b)(2) must meet an 'onerous standard.'"  Johnson v. Askin Capital Mgmt., L.P., 202 F.R.D. 112, 114 (S.D.N.Y. 2001) (citing Int'l Bhd. of Teamsters, 247 F.3d at 392).  To meet that standard, the moving party must demonstrate that "(1) the newly-discovered evidence was of facts that existed at the time of trial

or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching."  Becnel v. Deutsche Bank AG, 838 F. Supp. 2d 168, 171 (S.D.N.Y. 2011) (quoting Int'l Bhd. of Teamsters, 247 F.3d at 392).  Plaintiffs cannot satisfy that standard.[3]

### A.   The Account Statements Cannot Be The Basis For Newly-Discovered Evidence.

1.   Plaintiffs have had the account statements since at least 2004 and already asserted the same arguments based on them to the Court.

The account statements that Plaintiffs' counsel showed Mr. DeRosa during the deposition, which underlie his purported opinions that Plaintiffs allege is new evidence, are not new to Plaintiffs or this Court.  Judge Jones found that the account statements were provided to Plaintiffs in 2000.  (Dkt. No. 20 at 12.)  Notably, even Plaintiffs have conceded that they received the documents at least by April 2004, still almost seven years before they filed this case.  (Dkt. No. 14 at 8, n.4.)  In fact, Plaintiffs filed those exact same documents with the Court in June 2011 in support of their opposition to the motion to dismiss the Amended Complaint.  (*See* Dkt. Nos. 13-11 and 16-1.)  Thus, there can be no argument that those account statements are new to Plaintiffs or this Court.

Plaintiffs' allegation that the account statements somehow concealed the nature of the BLIPS loan is also not new and has been fully litigated.  For example:

---

[3]   In addition to the motion's factual inadequacies, none of the three cases cited by Plaintiffs provide any support for their newly-discovered evidence argument.  The Rule 60(b)(2) motions in United States v. Potamkin Cadillac Corp., 697 F.2d 491 (2d Cir. 1983) and Boule v. Hutton, 328 F.3d 84 (2d Cir. 2003) were both denied because the purported newly-discovered evidence was not new and would not have changed the result of the final judgment.  This case is no different and the result should be the same.  The motion in Ins. Co. of North America v. Public Serv. Mut. Ins. Co., 609 F.3d 122 (2d Cir. 2010), was granted, but the case involved unique circumstances concerning information that was only in the hands of the non-movant at the time of the order, and Plaintiffs here cannot—and do not even attempt to—analogize those facts to this case.

- In the Amended Complaint, Plaintiffs alleged that NatWest created "false documentation" that "fraudulently concealed from Gonzalez that the purported loan was a sham." (Dkt. No. 3 at ¶¶ 10, 33, and 36.)

- In their Opposition to the Motion to Dismiss, Plaintiffs alleged that the account statements "concealed the defective character of the loan." (Dkt. No. 14 at 9.)

- The Declaration of George Reinhardt, filed with Plaintiffs' Opposition to the Motion to Dismiss, attached the account statements and asserted, among other things, that the "account statements conceal the nature of the loan by NatWest to Birch Ventures." (Dkt. No. 16 at ¶ 7.)

- In their prior Motion for Reconsideration, Plaintiffs alleged that the "account statements misleadingly made it appear that there was legitimate investment activity in the account" and "conceal the fraudulent nature of the loan." (Dkt. No. 22 at 1-2.)

Judge Jones expressly considered the account statements and those allegations in her decision and held that they did not support a "conceivable, let alone plausible" fraudulent concealment claim. (Dkt. No. 20 at 12.) [4] Accordingly, it is misleading and wrong for Plaintiffs to argue that the account statements are new evidence or that Mr. DeRosa's deposition somehow led to new revelations that were unknown prior to Judge Jones's order. [5]

---

[4]     In full, Judge Jones specifically rejected Plaintiffs' assertion that the account statements supported a fraudulent concealment claim:  "At most, [Plaintiffs] claim that NatWest failed to provide account statements directly to Gonzales.  However, they concede that those statements were given to Presidio, Gonzales' agent. (Reinhardt Decl., ¶ 6.)  Therefore, they have not stated a conceivable, let alone plausible, basis for a fraudulent concealment claim."  (Dkt. No. 20 at 12.)

[5]     Indeed, during Mr. DeRosa's deposition, Plaintiffs' counsel confirmed his view that the  account statements were "clear" on their face and told the "whole story."  (See Dkt. No. 34-1 at 31 at 121:15-20 ("[MR. SCHAINBAUM]:  On June 13th – well, I think we'll have to wait because there's a few more statements and I think it becomes clearer, especially the last statement.  So I could represent to you that what happened is – at this point, I just want to wait and see how it unfolds with the actual statements."); Dkt. No. 34-1 at 36 at 139:22-140:05 ("MR. SCHAINBAUM:  He hasn't gone on to the rest of this one statement that I think tells the whole story here.  MR. GIBSON:  I know you think that statements tells the whole story, Marty, but the problem is is [sic] that the witness has never seen the document and you're asking him to agree with you and he cannot do that.").)  Thus, Plaintiffs cannot now argue that it was only through the testimony of Mr. DeRosa that they somehow unlocked information that was to that point hidden in the account statements.  To the contrary, Plaintiffs' counsel asked the witness leading questions based on his previously formed view of what he believes the account statement reveal.

> 2.    Plaintiffs cannot show they exercised due diligence in obtaining evidence related to the account statements.

Because Plaintiffs have had the account statements in their possession since at least 2004, they cannot now gain post-judgment relief based upon them.  In <u>Becnel v. Deutsche Bank AG</u>, 838 F. Supp. 2d 168 (S.D.N.Y. 2011), this Court confronted an identical situation when a BLIPS participant whose complaint against the lending bank was dismissed as time-barred moved for relief under Rule 60 claiming newly-discovered evidence in the form of an expert report.  According to the plaintiff, the expert reviewed evidence previously available to the plaintiff and concluded that it would have been impossible to assert plaintiffs' fraud theory before 2010.  Judge Scheindlin, however, rejected that argument.  When denying the motion, the Court explained:  "It strains credulity … to claim that expert conclusions based solely on information available to the plaintiff at the time the complaint was filed are facts of which the plaintiff was 'justifiably ignorant … despite due diligence." <u>Id.</u> at 171.[6]

This case presents the exact same situation and should have the exact same result. To the extent Plaintiffs believed expert opinions about the account statements they possessed were admissible and important to support their claims, they failed to exercise due diligence by not obtaining those opinions prior to the entry of the final judgment.  Accordingly, Plaintiffs are not entitled to relief under Rule 60(b)(2).

**B.    Mr. DeRosa's Deposition Testimony Did Not Exist At The Time Of Judge Jones's Order.**

Newly-discovered evidence for the purposes of Rule 60(b)(2) must have been in existence at the time of the final judgment.  <u>Gonzalez v. Gannett Satellite Info. Network, Inc.</u>,

---

[6]    <u>See also</u> <u>Lapiczak v. Zaist</u>, 54 F.R.D. 546, 548 (D. Vt. 1972) (expert opinions developed after trial were not permitted under Rule 60(b)(2) because plaintiffs could have obtained expert opinion testimony in the exercise of due diligence).

903 F. Supp. 329, 332 (N.D.N.Y. 1995) ("Under Rule 60(b)(2) … 'newly-discovered evidence' only refers to evidence of facts in existence at the time of judgment."), aff'd, 101 F.3d 109 (2d Cir. 1996); Walker v. Dep't of Veterans Affairs, No. 94 Civ. 5591 (MBM), 1995 WL 625689, at *2 (S.D.N.Y. Oct. 25, 1995) ("Rule 60(b)(2) authorizes relief from judgment on the basis of newly-discovered evidence, not newly *existing* evidence.") (emphasis in original).  Witness statements and expert opinions elicited in proceedings subsequent to the final judgment cannot constitute newly-discovered evidence.  See General Universal Sys., Inc. v. Lee, 379 F.3d 131, 158 (5th Cir. 2004) (holding witness statements in hearing on November 16, 2001 and expert report dated November 1, 2001 were not newly-discovered evidence for purpose of Rule 60(b)(2) because they were created after final judgment on September 27, 2001); Swope v. Siegel-Robert, Inc., 243 F.3d 486, 498 (8th Cir. 2001) (IRS appraisal of minority stock that was prepared after trial was not newly-discovered evidence under Rule 60(b)).

Here, there is no dispute that Mr. DeRosa's deposition occurred on August 29, 2012, six months after the March 20, 2012 order dismissing the Amended Complaint.  Therefore, Mr. DeRosa's alleged statements did not exist at the time of the final judgment and cannot be the basis for relief under Rule 60(b)(2).

### C.   Mr. DeRosa Offered No Substantive Opinions Or Admissible Evidence About The Account Statements And Plaintiffs' Characterization Of Mr. DeRosa's Testimony Is False And Misleading.

Even if Mr. DeRosa's deposition had occurred before the order dismissing the complaint was issued, Mr. DeRosa did not—and could not—offer any substantive evidence relevant to this case.  Mr. DeRosa was retained by the Government as a foreign exchange expert in a separate BLIPS case (filed in 2004) involving different parties.  As was repeatedly made clear during his deposition, Mr. DeRosa was not offered as a banking expert or a forensic accountant.  (See Dkt. 34-1 at 38 at 148:17-149:12.)  In fact, Mr. DeRosa repeatedly admonished

Plaintiffs' counsel that he had never seen the account statements prior to his deposition, had no idea what they were, and did not review them or rely on them for his opinions:

> Q [Plaintiffs' Counsel, Mr. Schainbaum].  All right.  And during your analysis, in order to prepare your report, did you have the occasion to look at any bank statements from any of the banks?
>
> A.  No.
>
> (Dkt. No. 34-1 at 28 at 109:20-23)
>
>             *        *        *
>
> Q.  Okay.  Dr. DeRosa, looking at Exhibit 3 that's marked for identification in the record, do you see that this is a statement that starts with the date 31 March '00, which I believe is the year 2000; am I correct?
>
> …
>
> A.  Okay.  I have to say I've never seen this before.  This is new to me.
>
> (Dkt. No. 34-1 at 31 at 119:20-21)
>
>             *        *        *
>
> MR. GIBSON:  Have you asked him whether he's ever seen these documents before?
>
> MR. SCHAINBAUM:  I believe he said for the first one, he had not.
>
> THE WITNESS:  I haven't seen any of them.
>
> (Dkt. No. 34-1 at 32 at 124:02-06)[7]

Because Mr. DeRosa had never seen the account statements (and Plaintiffs'

counsel could not identify the source of the documents (see Dkt. No. 34-1 at 37 at 142:12-

---

[7]     See also Dkt. No. 34-1 at 30 at 116:03-117:08.  Notably, both plaintiffs' and defendants' counsel in Shasta objected to Mr. Schainbaum's questions to Mr. DeRosa as beyond the scope of Mr. DeRosa's expertise and based on documents (the account statements) that were not part of discovery in that case.  (See Dkt. No. 34-1 at 33 at 127:15-128:06, 35-36 at 137:03-141:02.)  Further, the Government's counsel specifically noted for the record that Mr. Schainbaum was obviously and improperly attempting to take discovery for use in this action.  (Id. at 36 at 140:06-141:02.)

143:03)), Mr. DeRosa did not opine on the substance of the documents or what they purported to show.  Indeed, Plaintiffs' counsel specifically represented during the deposition that he "didn't ask [Mr. DeRosa] to testify to what [the account statements] mean."  (Dkt. No. 34-1 at 32 at 124:12-13.)  Thus, Plaintiffs cannot credibly argue that Mr. DeRosa's testimony is newly-discovered evidence that somehow allowed them to "decipher the fraudulent character of the NatWest account statements and letters."  (Dkt. No. 34 at 5.)  And given the complete absence of foundation for Mr. DeRosa's testimony and self-proclaimed lack of expertise on the subject matter about which he was questioned, his "opinions" would not be admissible in any event.

### D.  Mr. DeRosa's Alleged Statements Would Not Change Judge Jones's Holding That Plaintiffs' Were On Inquiry Notice And Therefore Barred From Asserting Fraudulent Concealment.

For relief under Rule 60(b)(2), the new evidence must have enough force to "probably … change the result of the former ruling."  Clavizzao v. United States, No. 08-6434, 2010 WL 6836461, at *2 (S.D.N.Y. Oct. 25, 2010) (denying Rule 60(b)(2) motion because new evidence concerning handwriting would not alter court's decision dismissing case for lack of subject matter jurisdiction); Boxill v. Brooklyn Coll., No. 96–CV–561, 2003 WL 21554498, at *6–7 (E.D.N.Y. July 10, 2003) (denying Rule 60(b)(2) relief where new evidence would not change the outcome because it failed to fix the plaintiff's inability to establish a requisite element of his claim).  Here, even if Plaintiffs' assertions about Mr. DeRosa's testimony were true, his purported statements would not alter the dismissal of Plaintiffs' fraudulent concealment claim because, notwithstanding any alleged fraud, there was widespread reports that the BLIPS transactions were fraudulent, which put Plaintiffs on inquiry notice.

As Judge Jones held, it is well established that the doctrine of equitable estoppel is not available to a party on inquiry notice.  Plaintiffs were on inquiry notice due to all the information in the public domain:  "the substantial amount of media attention, litigation activity,

and Government pronouncements provided inquiry—if not specific—notice to the Plaintiffs in

this case of the facts surrounding their alleged fraud."  (Dkt. No. 20 at 11.)  Accordingly, Judge

Jones rejected Plaintiffs fraudulent concealment claim:

> The Court rejects Plaintiffs' arguments that NatWest fraudulently
> concealed its activities, thereby preventing inquiry notice and
> tolling the limitations period.  The doctrine that they advance—
> equitable estoppel—is unavailable to them.  In the fraudulent
> misrepresentation or concealment context, "the equitable estoppel
> doctrine is not available to a plaintiff who possesses timely
> knowledge sufficient to place him or her under a duty to make and
> ascertain all the relevant facts prior to the expiration of the
> applicable statute of limitations."  Malone v. Bayerische Hypo-
> Und Vereins Bank, No. 08-cv-7277, 2010 WL 391826, at *11
> (S.D.N.Y. Feb. 4, 2010); see also Sierra Rutile Ltd. v. Katz, No.
> 09-cv-4913, 1995 WL 622691, at *7 (S.D.N.Y. Oct. 24, 1995)
> (rejecting argument that fraudulent concealment tolls the
> limitations period in fiduciary duty context).  Here, "[b]ecause the
> [Plaintiffs] were on notice of the alleged fraudulent misconduct
> long before the expiration of the applicable statute of limitations …
> they may not claim the benefits of equitable tolling under the
> doctrine of fraudulent concealment."  Malone, 2010 WL 391826,
> at *11.

> (Dkt. No. 20 at 11-12.)

Judge Jones's inquiry notice determination did not rely on the availability or

substance of the account statements, and Mr. DeRosa's purported statements about the account

statements are irrelevant to Judge Jones's holding that Plaintiffs were on inquiry notice.

Notwithstanding those statements, Plaintiffs had sufficient information to bring their claims

against NatWest long ago.

**III.      PLAINTIFFS' RULE 60(b)(3) MOTION FAILS TO ALLEGE ANY ACTS OF
          FRAUD UPON THE COURT IN CONNECTION WITH THE MOTION TO
          DISMISS.**

To prevail on a Rule 60(b)(3) motion on the basis of fraud, the movant must show

through clear and convincing evidence that "the conduct complained of prevented the moving

party from fully and fairly presenting his case."  State St. Bank v. Inversiones Errazuriz

Limitada, 374 F.3d 158, 176 (2d Cir. 2004).  The movants may not "merely reiterate the fraud claims that they asserted … in their Complaint."  Petreykov v. City of New York, No. 96-2980, 1998 WL 146691, at *1 (S.D.N.Y. Mar. 24, 1998).[8]

 Plaintiffs make no allegation that there was fraud upon the court or misconduct in connection with the motion to dismiss.  At most, Plaintiffs merely re-assert that the account statements somehow fraudulently concealed information from Plaintiffs and prevented them from filing this action within the statute of limitations.  Plaintiffs have repeatedly made that argument and the Court has already rejected it.  Accordingly, the motion under Rule 60(b)(3) should be denied.  See Kim v. Columbia Univ., No. 06 CV 5365 (RPP), 2011 WL 2019801, at *7 (S.D.N.Y. May 19, 2011) (denying Rule 60(b)(3) motion because the movant "makes no allegations that there was a fraud upon the court or misconduct in the trial"); Petreykov, 1998 WL 146691, at *1 (denying Rule 60(b)(3) motion because "Plaintiffs fail to establish that the judgment entered against them was procured by fraud.  Plaintiffs merely reiterate the fraud claims that they asserted … in their Complaint.").

## CONCLUSION

 Plaintiffs' motion raises no legal or factual basis justifying extraordinary relief under Rule 60.  Plaintiffs failed to file the motion within the time limits in Rule 60(c) and they do not identify any newly-discovered evidence that existed at the time of the final judgment.  The deposition testimony of David DeRosa is inadmissible and not probative of the issues in this

---

[8] Plaintiffs cite State Street Bank in support of their Rule 60(b)(3) motion, but that case confirms that Plaintiffs' motion is frivolous and should be denied.  There, Second Circuit affirmed the denial of a Rule 60(b)(3) motion because, like in this case, the movant possessed the supposedly withheld evidence in its files all along and therefore could not assert it was prevented from fully presenting its case..  The other cases cited by Plaintiffs in support of their Rule 60(b)(3) motion likewise provide no support.  See Taylor v. Texgas Corp., 831 F.2d 255 (11th Cir. 1987) (vacating order granting Rule 60(b)(2) and (3) motion because movant knew about supposed evidence all along and had a fair opportunity to present its case); Stridiron v. Stridiron, 698 F.2d 204 (3rd Cir. 1983) (granting motion because, unlike in this case, during discovery non-movant made misrepresentation about existence of documents); Rozier v. Ford Motor Co., 573 F.2d 1332 (5th Cir. 1978) (same).

case, and does not alter the conclusion that Plaintiffs' Amended Complaint is time-barred.  Nor

have Plaintiffs' presented any evidence of fraud or misconduct in connection with the motion to

dismiss.  Accordingly, the motion for relief from final judgment should be denied.


Dated:  New York, New York                    Respectfully submitted,
           April 3, 2013
                                              SCHULTE ROTH & ZABEL LLP

                                              By:  /s/Michael E. Swartz

                                              Howard Schiffman
                                              Michael E. Swartz
                                              919 Third Avenue
                                              New York, New York  10022
                                              (212) 756-2000

                                              *Attorneys for Defendant National Westminster Bank Plc*